UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          Index No.:

ANA GIL,

                     Plaintiff,

          -against-

MIKE'S HOP, INC., individually and d/b/a IHOP, and
BERNARDO DE JESUS, individually,

                  Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial By Jury

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et seq*. ("Title VII"), the New York State Executive Law and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, unlawful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. 2000e *et seq.*; 28 U.S.C. §1331 and §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4.  Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. §1391(b).

5.  On or about August 19, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.  On or about September 26, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7.  This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8.  Plaintiff is a female resident of the State of New York, County of Queens.

9.  At all times material, Defendant MIKE'S HOP, INC., individually and d/b/a IHOP (hereinafter also referred to as "IHOP") was and is a domestic business corporation duly incorporated under the laws of the State of New York.

10. At all times material, Defendant BERNARDO DE JESUS (hereinafter also referred to as "DE JESUS") was and is Defendant IHOP's "Owner."

11. At all times material, Defendant DE JESUS was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

12. Defendant IHOP and Defendant DE JESUS are hereinafter collectively referred to as "Defendants."

13. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

14. On or about May 1, 2013, Plaintiff began working for Defendant IHOP as a Waitress at its 11000 Flatlands Ave., Brooklyn, NY 11207 location.

2

15. Shortly after Plaintiff started working for Defendants, she was subjected to a hostile work environment on the basis of her sex.

16. For instance, Defendant DE JESUS regularly asked Plaintiff out for drinks or lunch, told her that she was beautiful, stood uncomfortably close to her while she was trying to work, and grabbed/held her hands when she tried to hand him menus or plates.

17. Then, on or about April 19, 2018, Defendant DE JESUS escalated his behavior by taking Plaintiff's telephone number from Defendant IHOP's files, without Plaintiff's permission, and text messaged her, "You don't say goodbye again 😊." Confused, Plaintiff responded, "Who's This"? Defendant DE JESUS replied, "Tu sabes / Te pudeo llamar / Si o no (you know / can I call you / Yes or no)." Plaintiff realized it was Defendant DE JESUS text messaging her and responded, "No 😩 sorry." Defendant DE JESUS then said, "You can't even give me curtsey of a phone call?" Plaintiff responded, "I don't like to make people waste their time. Also I don't like trouble or playing with people's feelings / So, es major así (So, it's better that way)." Defendant DE JESUS responded, "Wow, no puedo ni ablar contango. (Wow, I can't even talk to you). It's my time." Plaintiff politely responded, "Claro k si pero sino es apropiado. Es mejor evitar los problemas (Of course, but if it is not appropriate. It is better to avoid problems)." Despite Plaintiff's rejection of Defendant DE JESUS' advances, he text messaged Plaintiff, "I know you are involved in a relationship, I respect you. I would never tried (sic) to get you in any trouble. **I guess the [hardest] part for me in being in love with you since day one and not being love[d] back!!!** It's hurts (sic) / Que piensa, dime algo (What do you think, tell me something)." Plaintiff then responded, "I understand but I think you went a little too far saying "in love" that's a very strong statement that no one should

be saying just for the purpose of saying it.  It's good to know that you respect my relation (sic).  I respect the relation (sic) I have too.  So please 🙏 let's just leave it there."

18.    The very next day, Defendant DE **JESUS text messaged Plaintiff a photograph of an Applebee's Grill and Bar and wrote, "Te invito, quieres ir? (I'm inviting you, do you want to go?) / Ok la esperio aya!!! (I'll wait for you there)."** Plaintiff responded, "Omg." Defendant DE JESUS then text messaged, "Estoy afuera, quiere que nos juntemos aya o quineres ir contango (I'm outside, do you want us to meet there or do you want me to go with you?)"  Plaintiff responded, "No me siga poriendo en esa position please (Don't keep putting me in that position please)."   Despite her rejection, Defendant DE JESUS asked approximately three more times then finally said, "Ok mi gran amor, no sabes cuanto te amo, otro dia 😂 (Ok my great love, you don't know how much I love you, another day)."  Plaintiff did not respond.

19.    Then, on or about May 10, 2018, while at work, Defendant DE JESUS asked Plaintiff out on another date.   Plaintiff rejected Defendant DE JESUS and told him that she was in a relationship and wanted to be left alone.   However, as Plaintiff was leaving for the day, Defendant DE JESUS text messaged her, "...**You have no idea how much I am in Love with you 😍 How long are you going to keep me waiting? / Dime? (Tell me?).**"  Plaintiff responded "Hay dios (Oh god) / Ya hablamos de eso (We've already talked about that)." Defendant DE JESUS then responded, "Let me know when is good for [you] and we can dinner or lunch?? Whatever is good for you 😊."  Plaintiff did not respond.

20.    Then on or about May 11, 2018, Defendant DE JESUS text messaged Plaintiff, "…**What do you want for Mother's Day**?"  Plaintiff responded, "…. I'm good thanks."  Defendant DE

JESUS offered to buy Plaintiff a gift for Mother's Day in hopes of impressing her with his wealth and starting a sexual relationship with her.

21. Then, on or about June 14, 2018, Defendant DE JESUS **text messaged Plaintiff two photographs of herself that he found on her Facebook profile from 2013 and 2014**. Plaintiff responded, "Esas fotos son más Viejas K Cain (Those photos are older than Cain)." Defendant DE JESUS then responded, "Te encuentro muy linda, estoy muy enamorado de ti. Me vas a dar la oportunidad de conoscerte.  Ana Gil.  (I find you very pretty, I am very in love with you.  You are going to give me the opportunity to get to know you)"

22. Then, on or about October 11, 2018, Defendant DE JESUS text messaged Plaintiff two photographs of house construction and wrote, "**Our future home if you want it, opportunity only come by once in a while, don't pass it by, it might never come again** 😊."  Plaintiff responded, "Nice 😊 😊 K Dios le de mucha vida y salud 🙏 para k la disfrute y muy probable al lado de Maritza 😁 (May God give you a lot of life and health for you to enjoy and very likely next to Martiza (Defendant DE JESUS' wife))."  Defendant DE JESUS responded with three more photographs of what the house would look like when completed and wrote, "**I want you, I am and being in love with you!!  I can't help how I feel!!!** 😓 **Tu lo puedes tener todos con tu hija, (You can have it all with your daughter) don't miss this opportunity, it might never come again.**"  Because Plaintiff did not respond, Defendant DE JESUS sent her a photograph of two jet skis and wrote, "Ok, think about instead of being with a looser (Plaintiff's boyfriend)!! Siempre vas a estar pasando trabajos cuando puede esta como una reina!! 😜 (You will always be going through troubles when you can be like a queen)."  Plaintiff again did not respond.

23. Then, on or about October 17, 2018, Defendant DE JESUS **sent Plaintiff a photograph he took of her while watching Defendant IHOP's surveillance cameras and wrote, "Te estoy mirando (I'm watching you)."** This made Plaintiff extremely uncomfortable and she replied, "Scary." Defendant DE JESUS replied, "Porque, siempre está en mi mente (Why are you always on my mind?)." Plaintiff responded, "🙈🙈🙈."

24. Plaintiff then went to Defendant IHOP's General Manager and Defendant DE JESUS' younger brother, Ariel Marine, and said, "I'm very uncomfortable. [Defendant DE JESUS] is sending photos of me from the security camera." Mr. Marine laughed at Plaintiff and said, "Mr. B is really in love with you." Frustrated that Mr. Marine was not doing his job, Plaintiff walked away.

25. Shortly thereafter, on or about October 31, 2018, Defendant DE JESUS asked Plaintiff to borrow her phone to take photos of construction happening at the restaurant. When Plaintiff asked why he could not use his own phone, Defendant DE JESUS responded that it was in his office and he just needed to take a few, quick photographs. Defendant DE JESUS did take photographs of the construction but **also took a photograph of Plaintiff without her knowledge and later text messaged it to her and wrote, "Te ves bella, as always (You look beautiful, as always)."** Plaintiff responded with an angry face emoji and asked Defendant DE JESUS why he sent photographs of her to his phone. Defendant DE JESUS simply responded, "Por que me gustan!! Mucho!! (Because I like them!! A lot!!) What's wrong with that?" Plaintiff did not reply.

26. Defendant DE JESUS' harassment continued and on or about January 11, 2019, he text messaged Plaintiff, "**Dondes el amor de mi vida, (where is the love of my life?), the most**

**beautiful woman my eyes have ever seen** 😍 **/ You know I always being in love with you.**" Plaintiff did not respond.

27. Then, on or about March 12, 2019, Plaintiff text messaged Defendant DE JESUS to see if she needed to close the restaurant since it was a slow day.  Defendant DE JESUS told her no and wrote, "Thank [you] so much for [being] willing to help out.  You (sic) want you to start managing!!  I will make it worth your while."  Plaintiff responded, "Let's see you know I have a kid and I got (sic) to school so mi disposición (my disposition) is kind of limited." Defendant DE JESUS then responded, "I will make it worth your while **and take care of your daughter**."  Plaintiff did not respond and left for the day.

28. In or around April 2019, Plaintiff brewed some special Dominican coffee for her coworkers. Defendant DE JESUS saw that she was making it and asked her to bring some to his office, which Plaintiff did.  Then, when she went to sit the coffee on his desk, Defendant DE JESUS grabbed her hand, pulled her towards him, **kissed her on the mouth**, and said, "Why are you afraid.  I've been in love with you for many years."  Shocked by Defendant DE JESUS' assault, but not wanting to experience retaliation, Plaintiff pushed Defendant DE JESUS away and said, "You're funny but I have customers to take care of.  Enjoy your coffee."  Plaintiff immediately left Defendant DE JESUS' office.

29. After this, Defendant DE JESUS tried to kiss Plaintiff approximately four more times during Plaintiff's employment.

30. On or about May 15, 2019, Defendant DE JESUS text messaged Plaintiff, "Mi Amor (My love), let's have lunch as two friends, nothing more Oliver (sic) Garden in bayridege (sic) Brooklyn Plz!!  Hoy no tienes excusas (Today you don't have any excuses)."  When Plaintiff did not respond, he text messaged again and wrote, "No sea mala conmigo, (don't be mean to

me), you know I care about you a lot!!  No one has to know.  So yes?"  Plaintiff responded,

"Omg please no siga insistiendo con algo k sabe k no es posible por muchas razones 😊

(don't keep insisting with something that you know is not possible for many reasons.)"

31.  On or about June 20, 2019, Defendant DE JESUS text messaged Plaintiff, "I miss you, you

don't call me or text me."  Plaintiff responded, "[It] is not like we talk all the time you see me

here and there at work but that about it."  Defendant DE JESUS then replied, "**I know but I**

**want to be closer to you.  Do you want to do lunch today My treat** 🙏."  Plaintiff then

responded, "I can't besides not being an appropriate thing to do hoy menos (even less today)

I have to pick up my daughter and [in] a few and do some stuff for her stepping up

ceremony/graduation is tomorrow."

32.  On or about July 31, 2019, Defendant DE JESUS sent Plaintiff a video of his new house and

wrote, "Mira mi nueva casa (look at my new house)."  Plaintiff responded, "really nice / Dios

se k deje gozar 🙏🙏🙏😁😁 (God let you enjoy)."  Defendant DE JESUS then wrote,

"**It would be for both of us!!! You (sic) decision** 😎."  Plaintiff then wrote, "Cualkiera que

lo olle 🤭 (Anyone who hears you)."  To which Defendant DE JESUS replied, "**One move,**

**would change your (sic) and your [daughter's] life for ever (sic)**!!  What's stopping you.

No te gusto?  (You didn't like it?)."  Plaintiff did not respond.

33.  Then, on or about September 12, 2019, Defendant DE JESUS text messaged Plaintiff, "I left

work early, it was really slow.  Going to spend time with my grandkids."  Defendant DE

JESUS then sent Plaintiff a photograph of his grandchildren.  Plaintiff responded, "Oh wow

Sep is always a slow month. Omg 😊 the baby so big already god bless them 🙏♡."

Defendant DE JESUS then replied, "Yes he getting so big., **Quiero baby contigo cuanto tu sea mia 🔫 (I want a baby with you when you are mine).**" Plaintiff did not respond.

34. On or about November 13, 2019, Defendant DE JESUS text messaged Plaintiff, "You know I went to IHOP just to see you not because I needed to be there.  I don't understand why you keep running from me.  Wow after all this time." Plaintiff did not respond.

35. Then, on or about December 4, 2019, Defendant DE JESUS text messaged Plaintiff, "I want to see you / that's all I want for my birthday 🙏 / Where are you, I can come by you, if that's ok / No?" Plaintiff responded, "Toy esperando La Niña (I'm waiting for the girl)." Defendant DE JESUS then responded, "Ok, mi amor impossible (my impossible love) 😊 When you are ready may be (sic) I will still be interested."  Defendant DE JESUS then text messaged Plaintiff, "Estoy triste, lo único que guiero en este día no lo puedo tener.  A ti Ana Gil 😭 (I'm sad, the only thing I want on this day I can't have.  Its you Ana Gil) / Tengo todos, menos la mujer que amo!!  (I have everything, except the woman that I love)." Plaintiff responded, "No creo k hay necesidad que sea tan exajerado 😊 (I don't think there's a necessity to be so exaggerated)."

36. On or about December 22, 2019, Defendant DE JESUS text messaged Plaintiff, "**Baby what do you want for Xmas ??**"

37. On or about January 2 2020, Defendant DE JESUS called Plaintiff and said that his wife had found out about his messages to Plaintiff.  Plaintiff responded, "I told you.  I've been telling you that you keep forgetting that you have a family.  That's why I don't understand why you've been calling me and texting me especially knowing that I'm in a relationship." Defendant DE JESUS responded, "**Well I am in love with you.  I can't help it.  That's why**

**I keep trying.  You can't tell your heart how it needs to feel.**"  Plaintiff responded, "Okay, you should say bye then," and hung up the phone.

38. After this, Defendant DE JESUS only had contact with Plaintiff at work and said things to Plaintiff such as "I am suffering," "I love you and you don't feel the same way and it hurts," and "I feel so bad that I can't communicate with you freely anymore."  Plaintiff continued to reject Defendant DE JESUS.

39. From in or around March 2020 until June 2020, Plaintiff was not working at Defendant IHOP due to New York City's closure of indoor dining because of COVID.  However, Defendant IHOP was still operating for take out orders.  Therefore, any time Defendant DE JESUS was at Defendant IHOP he called Plaintiff from the restaurant phone.  When Plaintiff didn't answer he left her voicemails letting her know the hours he would be at the store and asking her to call him to talk.  Plaintiff never called him.

40. Then, in or around July 2020, outdoor dining was allowed in New York City.  Therefore, Plaintiff returned to Defendant IHOP and Defendant DE JESUS' sexual harassment continued.  For instance, Defendant DE JESUS told Plaintiff things such as, "I love you," and "I could offer you a better life."  **Defendant DE JESUS also regularly stared at Plaintiff and licked his lips in a sexual manner**.

41. On or about October 26, 2020, Defendant DE JESUS text messaged Plaintiff, "Hola como esta (Hi, how are you?) / te estabas llamando y no contestate (I was calling and you didn't answer) / **Este es mi nuevo numero me puedes llamar anytime (This is my new number, you can call me anytime)**."  Plaintiff then responded, "who is this?"  Defendant DE JESUS replied, "B (Defendant DE JESUS)."  Plaintiff did not respond.

42. On or about November 3, 2020, **Defendant DE JESUS text messaged Plaintiff the address of the Hilton Garden Inn/ JFK airport and wrote "Ok?"** Plaintiff replied, "Excuse me 🙄." Defendant DE JESUS then called Plaintiff and said, "I just wanna talk to you in private." Plaintiff replied, "What do you mean? It's a hotel and we know the mentality of people when they invite someone to a hotel." Defendant DE JESUS again said, "It's just a quiet place where we don't have to be bothered." Plaintiff replied, "No, a hotel is a hotel, and I am busy right now," and hung up the phone.

43. The next day, Defendant DE JESUS text messaged Plaintiff, "I guess when I get back, baby **tomorrow I am getting rid of this phone, I only got it because of you**." Plaintiff responded, "safe trip 🙏."

44. In or around the beginning of December 2020, Plaintiff requested time off from work to go to the Dominican Republic to spend time with her ill grandfather. Defendant DE JESUS offered to buy Plaintiff's plane ticket, but Plaintiff declined.

45. After Plaintiff arrived back in the United States, she had to quarantine per COVID-19 guidelines. However, during the quarantine, her grandfather's condition worsened and she flew back to the Dominican Republic for approximately three weeks. During this time, Defendant DE JESUS continued to contact Plaintiff and offer her money. He also told her, "I have people out there and I can send you money or whatever you need. No one has to know." Plaintiff always declined Defendant DE JESUS' offers.

46. On or about December 27, 2020, when Plaintiff returned from the Dominican Republic, dining was again closed in New York City and she could not return to Defendant IHOP.

47. However, on or about January 14, 2021, Plaintiff and her daughter went to Defendant IHOP because Plaintiff had a previous paycheck to retrieve. When Plaintiff arrived, Defendant DE

JESUS gave her the check but Plaintiff told him that she had been paid more than she was owed.  Defendant DE JESUS replied, "It is unpaid vacation and sick time **plus a little more**." **Defendant DE JESUS then gave Plaintiff's daughter fifty dollars**.  Defendant DE JESUS gave Plaintiff and her daughter money in order to entice Plaintiff into entering a sexual relationship with him.

48. Then, on or about January 17, 2021, Defendant DE JESUS text messaged Plaintiff from another phone and said, "**This is my new phone, you can text me or call me anytime.**" Plaintiff responded, "Got it."

49. The next day, Defendant DE JESUS text messaged Plaintiff, "Hola, que ase (Hi what are you doing)."  Plaintiff responded, "Hey / laundry / como estas (how are you)."  Defendant DE JESUS responded, "**Ok, I am lonely. I want you…**"  In order to reject Defendant DE JESUS, but not experience any retaliation, Plaintiff responded, "Life a little complicated at times."

50. On or about January 21, 2021, Defendant DE JESUS called Plaintiff and in a frustrated tone said, "I am leaving for the Dominican Republic soon and I wanted to talk to you.  The date for me to leave is approaching and I didn't get to spend any time with you.  **I'm so disappointed that I've been so in love with you this whole time and you are spending your time with a useless man.**"  Plaintiff responded, "Whatever my decision is you don't have the right to be talking about somebody else like that."  Defendant DE JESUS sarcastically replied, "I wish you well in life.  I'm leaving for DR (Dominican Republic) and I don't know when I'll be back."  Defendant DE JESUS then hung up the phone.

51. However, shortly after the call, Defendant DE JESUS text messaged Plaintiff, "I…wanted to spend two weeks with you, but it looks impossible again.  So I am planning on leaving the 30th for a month."  Due to Defendant DE JESUS' frustrated tone, and the fear of losing her

job, Plaintiff responded, "Two weeks 🙇‍♀️ only if I had a regular life 😭 😭." Defendant DE

JESUS then replied, "You always have a good excuse!!!  I felt (sic) in love with [you] but I

guess you don't feel the same.  I am always chasing you for how many years?  For what!!!

It's complicated that's what I get from you.  Decide I can't keep torturing myself and always

wondering what you (sic) doing, how you are!!  Enough." Plaintiff then responded, "Oh wow

/ I think 🤔 you are exaggerating a little / Just cuz I'm not a business lady doesn't mean I

don't have a full schedule it could be ONLY taking care of my child with help / And we both

grown there is a situación (situation) bigger than just querer pasar tiempo juntos (just wanting

to spend time together) / Not here to judge what you feel or to tell you how I might feel."

Defendant DE JESUS then said, "Ok prove me wrong, Let's be adults, tu me quieres si or

no!!  Yo quiero estar contino (do you want me yes or no!!  I want to be with you) Do you

want to be with me yes or no!!!  Simple is not complicated."  Plaintiff then responded,

"Aunque no lo veas de esa forma si es un poco complicado este asunto (Although you don't

see it this way, yes it is a bit complicated this is true)."

52. On or about January 23, 2021, in order to avoid retaliation, Plaintiff text messaged Defendant

DE JESUS, "Hey 👋 siento mucho se estas molesto por Alguna razón conmigo.  Mis

intenciones nunca han sido jugar ni lastimar.  Sin embargo siempre he tratado de Mantenerme

al Margen Pork el que juega con fuego 🔥 se quema y no estoy en mejor posición que digamos

pa inventor.  En fin feliz tarde 🙏 (I'm sorry if you are upset with me for any reason.  My

intentions have never been to play or hurt, yet I've always tried to stay out of it because he

who plays with fire gets burned.  And I am not in a good position, lets say, to play around)."

Defendant DE JESUS responded, "It's ok Ana, after all this time and I thought we had

something special, I list (sic) I felt that. May be (sic) I am a fool for thinking something would

came out from this relationship!!  What I felt for you all these years was real, something I never felt before but again fui un tonto esnamorado de la mujer esquibocada (but again I was a fool in love with the wrong woman).  It's real shame because you deserve to be happy.  **I wanted to be your guardian angel and give you a better life**, may you and Luigi deserve each other.  My heart is broken but it's ok.  Life goes on!!"  Plaintiff responded, "Not at all / and Luigi (Plaintiff's boyfriend) is a whole other topic / that doesn't add or subtract to our situation."  Defendant DE JESUS did not respond.

53. Then, on or about January 27, 2021, in fear of losing her job, Plaintiff text messaged Defendant DE JESUS, "Buenos días."

54. The next day, Defendant DE JESUS replied, "No tienes el valdor de ablar personalment (you don't have the courage to speak in person)."  Plaintiff then explained that her intentions were to speak to him in person and that was why she sent the good morning text message to him. Defendant DE JESUS replied, "I am leaving work, do you have minutes.  I can meet by cross bay."  Plaintiff responded that she was with her daughter and that she wanted to speak to him in person but that Defendant DE JESUS had taken things the wrong way.  Defendant DE JESUS responded, "I took things the way I saw them y como tu me mostrate (and how you showed me)."  Defendant DE JESUS then accused Plaintiff of "playing with his feelings." Plaintiff responded, "[I] never played with you, your feelings, time, or your emotions.  That doesn't even sound like me I truly believe in karma."

55. The next day, Defendant DE JESUS text messaged Plaintiff, "If you never being (sic) in love with someone you will never know how much it hurts!!! El ser engañado y lo peor es que yo pense que abia algo muy especial entre tu y yo, pero que tonto fui, ya me voy a desaser de este telefono.  Recuerda que te fui sincere tea me mas de lo te imaginablas aún fui muy

pasiente, espere muchos años solamente para no ser valorado!! Te decro mucha suerte y espero que encuentre ese hombre que te vas aser feliz cuidate (being deceived and the worst thing is that I thought there was something special between you and me, but what a fool I was. **I'm going to get rid of this phone.**  Remember that was sincere, I loved you more than you imagined, I was still very patient, I wanted for many years only to not be valued! I say good luck to you and I hope that you find a man that is going to make you happy.  Take care of yourself)."  Plaintiff replied, "Aunque no comparta lo k piensas si puedo entender tu posición. Y el porque estás molesto (Although I do not agree/share the same ideas as you, I can understand your position and why you are upset)."

56. Shortly thereafter, on or about February 14, 2021, indoor dining resumed in New York City; however, **Plaintiff was never contacted about her schedule**.  Therefore, Plaintiff called Mr. Marine on two separate occasions and was told he was too busy to speak to her.

57. Plaintiff was taken off of Defendants' schedule because she rejected Defendant DE JESUS' sexual advances.

58. Plaintiff's continued employment, and the benefits and conditions of such employment, were based on her submission to and/or refusal of Defendant DE JESUS' sexual advances.

59. On or about February 14, 2021, Plaintiff was taken off the schedule because she rejected Defendant DE JESUS' sexual advances and complained of such behavior.

60. Defendants would not have harassed Plaintiff but for her sex/gender.

61. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

62. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

64. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

**AS A FIRST CAUSE OF ACTION
UNDER TITLE VII
<u>DISCRIMINATION</u>
(AS TO DEFENDANT IHOP ONLY)**

65. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant.  Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

67. Defendant IHOP engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, unlawful termination, and assault and battery.

**AS A SECOND CAUSE OF ACTION**
**UNDER TITLE VII**
**RETALIATION**
**(AS TO DEFENDANT IHOP ONLY)**

68.  Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

70.  Defendant IHOP engaged in an unlawful employment practice, prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**DISCRIMINATION**

71.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72.  Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's … sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

73.  Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

74. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## RETALIATION

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

77. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to Defendants' unlawful actions.

## AS A FIFTH CAUSE OF ACTION
## UNDER STATE LAW
## AIDING AND ABETTING

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

80. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

83. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination.

## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

86. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York Executive Law and the Administrative Code of the City of New York on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and unlawful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: December 14, 2022
New York, New York

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*


By: */s/ Gregory Kirschenbaum*
Gregory W. Kirschenbaum, Esq.
45 Broadway, Suite 430
New York, NY 10006
(212) 248-7431